1  Dana J. Oliver, Esq. (SBN: 291082)
   dana@danaoliverlaw.com
2  OLIVER LAW CENTER, INC.
3  8780 19th Street #559
   Rancho Cucamonga, CA 91701
4  Telephone:  (855)384-3262
5  Facsimile:  (888)570-2021

6
   Attorney for Plaintiff and Putative Class
7

8

9              UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
10

11 | LINDA JOHNSTONE, individually  | Case No.
   | and on behalf of all others similarly |
12 | situated,                      |
   |                                | **COMPLAINT FOR
13 |                                | INJUNCTION AND DAMAGES**
14 |              Plaintiff,        |
   |       v.                       |
15 |                                | **Class Action**
16 | LHF MARKETING CORP. and        |
   | SAKURA BPO, LLC                | **JURY TRIAL DEMAND**
17 |                                |
18 |              Defendants.       |

19

20         Plaintiff Linda Johnstone ("Ms. Johnstone"), by her undersigned counsel, for

21 this class action complaint against Defendants LHF Marketing Corp. and Sakura

22
23 BPO, LLC ("Defendants") and their present, former and future direct and indirect

24 parent companies, subsidiaries, affiliates, agents and related entities, allege as

25 follows:
26

27

28

## I.    INTRODUCTION

1.    Nature of Action: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.    "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of

this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person

when . . . [t]hat person's telephone number is on the "do-not-call" registry,

maintained by the Commission.')…Private suits can seek either monetary or

injunctive relief. *Id*…This private cause of action is a straightforward provision

designed to achieve a straightforward result. Congress enacted the law to protect

against invasions of privacy that were harming people.  The law empowers each

person to protect his own personal rights. Violations of the law are clear, as is the

remedy. Put simply, the TCPA affords relief to those persons who, despite efforts

to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v.

Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      Plaintiff, individually and as class representatives for all others

similarly situated, brings this action against LHF Marketing Corp. and Sakura

BPO, LLC for violations of the Telephone Consumer Protection Act, 47 U.S.C.

§ 227 ("TCPA") for making telemarketing calls to numbers on the National Do

Not Call Registry, including their own.

4.      Because telemarketing campaigns generally place calls to thousands

or even millions of potential customers *en masse*, Plaintiff brings this action on

behalf of a proposed nationwide class of other persons who received illegal

telemarketing calls from or on behalf of Defendant.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   PARTIES

5.  Plaintiff Johnstone is an individual that, at all relevant times, was located in this District.

6.  Defendant LHF Marketing Corp. is a California corporation.

7.  Defendant Sakura BPO LLC is a California limited liability company.

## III.   JURISDICTION AND VENUE

8.  <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff' TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.  <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendants because their conduct at issue was sent into this District and the Defendants reside in this District.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred into this District.

## IV.   FACTS

**A.   The Enactment of the TCPA and its Regulations**

11.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.   § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13.   The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

14.   A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15.   The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.**    **Defendant's Unsolicited Telemarketing to Plaintiff**

16.    Plaintiff Johnstone is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.    Plaintiff's residential telephone number is (805) 657-XXXX.

18.    That number has been on the National Do Not Call Registry since July of 2019 and it has not been removed from the Registry since that time.

19.    Ms. Johnstone uses the number for personal, residential, and household reasons.

20.    Plaintiff Johnstone never consented to receive calls from either Defendant.

21.    Plaintiff Johnstone never did business with Either Defendant.

22.    Sakura BPO contacted Ms. Johnstone with telemarketing calls on June 13 and June 27, 2022.

23.    During the June 13, 2022 call, Sakura BPO asked if the Plaintiff was interested in a quote to refinance his home.

24.    When the call was answered, it was made clear that the call recipient was not interested and asked that the number no longer be called.

25.    Despite this, the Defendant called again on June 27, 2022.

26.    During this call, the Defendant used the same scripted questions as they did on the June 13, 2022 call.

27.     The Plaintiff was solicited to purchase refinance services and asked

further qualification questions such as what his house is worth, how much he owes

and what credit score he has.

28.     The calls were made by Sakura BPO pursuant to a contract it had with

LHF Marketing Corp. to generate mortgage leads.

29.     Before directing their telemarketing to him, Defendants never did

anything to confirm that Plaintiff had provided prior express written consent to

their telemarketing, and Defendants knew or should have known that Plaintiff had

not provided prior express written consent to receive telemarketing calls promoting

Defendants' goods or services and that illegal telemarketing was conducted on

behalf of Defendant.

30.     The telemarketing alleged herein: (A) invaded Plaintiff' privacy and

solitude; (B) wasted Plaintiff' time; (C) annoyed Plaintiff; (D) tied up Plaintiff'

phone line; and (E) harassed Plaintiff.

## V.     LHF MARKETING'S LIABILITY FOR SAKURA BPO'S CONDUCT

31.     For more than twenty years, the FCC has explained that its "rules

generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397

¶ 13 (1995).

1    32.    In 2008, the FCC likewise held that a company on whose behalf a

2    telephone call is made bears the responsibility for any violations.

3    33.    The FCC has instructed that sellers such as LHF Marketing may not

4    avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and

alteration marks omitted).

34.    In 2013, the FCC held that a corporation or other entity that contracts

out its telephone marketing "may be held vicariously liable under federal common

law principles of agency for violations of either section 227(b) or section 227(c)

that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

35.    LHF Marketing is liable for telemarketing calls placed by Sakura BPO

to generate customers for LHF Marketing.

36.     LHF Marketing authorized the outbound calling conduct of such third parties.

37.     LHF Marketing controls the day-to-day activities of Sakura BPO's telemarketing for LHF Marketing.

38.     LHF Marketing provided the specific criteria for the leads it would accept and required Sakura BPO, to adhere to those criteria.

39.     LHF Marketing also had the ability to obtain information on demand regarding Sakura BPO's calling conduct.

40.     LHF Marketing knew or reasonably should have known that Sakura BPO was violating the TCPA on LHF Marketing's behalf but LHF Marketing failed to take effective steps within its power to cause them to stop.

41.     For example, LHF Marketing knows what telephone numbers are transferred to them and can check if those telephone numbers are on the National Do Not Call Registry.

42.     It did not.

43.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of

COMPL.
*Johnstone v. LHF Marketing Corp., et. al.*

demonstrating that a reasonable consumer would not sensibly assume that the

telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## VI.   CLASS ACTION ALLEGATIONS

44.   <u>Class Definition</u>.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3),

Plaintiff bring this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United
> States whose (1) telephone numbers were on the National Do Not Call
> Registry for at least 31 days, (2) but who received more than one
> telemarketing call from or on behalf of Defendants, (3) within a 12-
> month period, (4) at any time in the period that begins four years
> before the date of filing this Complaint to trial.

45.    Excluded from the Class are counsel, Defendants, any entities in

which Defendants had a controlling interest, Defendants' agents and employees,

any judge to whom this action is assigned, and any member of such judge's staff

and immediate family.

46.   The Class, as defined above, is identifiable through telephone records

and telephone number databases.

47.   The potential members of the Class likely number at least in the

hundreds because of the *en masse* nature of telemarketing calls.

48.   Individual joinder of these persons is impracticable.

49. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

50. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

51. Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

52. This class action complaint seeks injunctive relief and money damages.

53. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

    a. whether LHF Marketing Corp. is vicariously liable for the conduct of Sakura BPO;

    b. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

c.      whether Defendants made calls to Plaintiff and members of the

National Do Not Call Registry Class without first obtaining prior express written

consent to make the calls; and

d.      whether members of the Class are entitled to treble damages

based on the willfulness of Defendant's conduct.

54.    Plaintiff' claims are typical of the claims of the Class.

55.    Plaintiff' claims, like the claims of Class, arise out of the same

common course of conduct by Defendant and are based on the same legal and

remedial theories.

56.    Common questions of law and fact predominate over questions

affecting only individual class members, and a class action is the superior method

for fair and efficient adjudication of the controversy. The only individual question

concerns identification of class members, which will be ascertainable from records

maintained by Defendant and/or its agents.

57.    A class action is the superior method for the fair and efficient

adjudication of this controversy. Class-wide relief is essential to compel Defendant

to comply with the TCPA. The interests of individual members of the Class in

individually controlling the prosecution of separate claims against Defendant are

small because the damages in an individual action for violation of the TCPA are

small. Management of these claims is likely to present significantly more

difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

58.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

59.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

60.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making

telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

61.     Defendant's violations were negligent, willful, or knowing.

62.     As a result of Defendants', and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

63.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.   A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E.   An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

F.   An award to Plaintiff and the Class of damages, as allowed by law; and

G.   Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VII.   DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

## VIII.   SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.

RESPECTFULLY SUBMITTED AND DATED this 9th day of August, 2023.

1

2

By: */s/ Dana J. Oliver*

3

Anthony I. Paronich, *Pro Hac Vice*
*Forthcoming*

4

anthony@paronichlaw.com

5

PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400

6

Hingham, Massachusetts 02043

7

Telephone: (617) 738-7080
Facsimile: (617) 830-0327

8

9

Andrew W. Heidarpour, *Pro Hac Vice*
*Forthcoming*

10

aheidarpour@hlfirm.com

11

HEIDARPOUR LAW FIRM, PPC

12

1300 Pennsylvania Avenue NW, 190-318
Washington, DC 20004

13

Telephone: (202) 234-2727

14

15

*Attorneys for Plaintiff and the Proposed*
*Classes*

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -
COMPL.
*Johnstone v. LHF Marketing Corp., et. al.*